UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUSSELL ALLEN PASSONS, | Case No. 1:18-cv-00344-DCN |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| JAY CHRISTENSEN, | |
| Respondent. | |

Pending before the Court are several motions filed by the parties in this habeas corpus matter filed by Petitioner Russell Allen Passons, who is serving Idaho state criminal sentences. Respondent Jay Christensen has filed a motion to dismiss several claims on procedural grounds. Dkts. 20, 22, 25, 26. The motions are fully briefed and ripe for adjudication. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1.

Accordingly, the Court enters the following Order granting in part and denying in part Respondent's motion.

## REVIEW OF MOTION TO DISMISS

### 1. Background

On direct appeal, the Idaho Court of Appeals described the underlying facts as

MEMORANDUM DECISION AND ORDER - 1

follows:

> The State alleged that Passons entered a retail store in Post
> Falls and took a car seat and stroller combination (stroller)
> without paying for it and placed it in his car. Passons then re-
> entered the store, placed a television into a shopping cart, and
> again exited without paying. However, two store employees
> observed Passons exit without paying and confronted him in
> the parking lot. These employees asserted that Passons pulled
> a knife and pointed it at them and then ran to his car and drove
> away, leaving the television in the shopping cart.

State's Lodging B-5, pp.1-2.

Petitioner was charged with one count of burglary and two counts of aggravated assault in a criminal action in the First Judicial District Court in Kootenai County, Idaho. He was also charged with using a deadly weapon in the commission of a crime and with being a persistent violator. State's Lodging A-1, pp. 54-56. The theme of Petitioner's defense was that the employees were mistaken or lying about the presence of the knife, escalating a simple shoplifting case into a serious criminal matter with a much longer prison sentence.

Petitioner initially was represented by an attorney from the public defender's office, Brad Chapman, but later moved to represent himself. State's Lodging A-1, pp. 20, 35-37. Chapman remained on the case as stand-by counsel. *Id.*, p.41; F-4, p. 2. Shortly afterward, Petitioner complained about his limited pro se resources, and the Court strongly encouraged Petitioner to allow Chapman to represent him; Petitioner agreed. State's Lodgings A-1, pp. 95-97; F-4, p.2. Chapman represented Petitioner at trial. State's Lodgings A-1, pp. 213-36; A-2, pp. 6-329.

MEMORANDUM DECISION AND ORDER - 2

Walmart employees (including the two victims), a friend of Petitioner, and law enforcement officers testified for the State. *See* State's Lodging A-1. Before concluding the trial, the trial court carefully reviewed with Petitioner whether he understood he had the right to testify and the right to remain silent, and it was his choice, not his attorney's choice, as to whether he testified. He chose to remain silent, and his attorney called no witnesses to testify on his behalf. *Id*. at 254-256.

The jury found Petitioner guilty of burglary and both counts of aggravated assault. State's Lodgings A-1, p.273; A-7, pp. 296-297. Petitioner waived his right to a jury trial on the two sentence enhancements. State's Lodging A-7, pp. 302-05. The trial court found the State had proved the deadly weapon enhancement on one count but did not prove the persistent violator enhancement. State's Lodgings A-1, p. 303; A-2, pp. 325-339. Petitioner was sentenced to five years fixed for the first assault count; ten years fixed with twenty years indeterminate for the second assault count (including the deadly weapon enhancement); and five years fixed with ten years indeterminate for the burglary count, all to run concurrently. State's Lodging A-1, pp. 315-17.

### 2.    Standard of Law

#### *A. Cognizability*

A petitioner may seek federal habeas relief from a state-court conviction or sentence "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Generally, federal habeas corpus relief is not available for alleged errors in a state court's interpretation and application of state law.

*Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994). Where no relief is available for a claim falling outside the statute's narrow reach, the claim is deemed "noncognizable."

### B. Exhaustion Requirement

A petitioner must "properly exhaust" his state court remedies before pursuing a claim in a federal habeas corpus petition. 28 U.S.C. § 2254(b). That means "fairly presenting the claim" based on a federal theory to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has properly exhausted his state court remedies for a particular claim, a federal district court cannot grant relief on that claim, but it does have discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies remaining available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). If a claim has not been properly exhausted in the state court system, the claim is considered "procedurally defaulted." *Id.* at 731.

### C. Exceptions to Procedural Default Bar

Even if a claim is procedurally defaulted, Petitioner may qualify for an exception that permits the Court to hear the merits of his claims: "cause and prejudice" or "actual

innocence." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must show both cause *and* prejudice to excuse a procedural default. To show "prejudice," a petitioner must demonstrate "not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, the Court can hear the merits of the claim if he meets the "fundamental miscarriage of justice" exception. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Carrier*, 477 U.S. at 496. Actual innocence must be premised on "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 64, 623 (1998).

## 2. Discussion of Noncognizability Arguments

Respondent contends that Claims 1, 5(b), and 5(c) are not cognizable, meaning that they do not state a claim for habeas corpus relief under the law.

### A. Discussion of Claim 1

Claim 1 is that the State "failed to follow [its] own laws" when it enhanced Petitioner's sentence, which led to an "unauthorized sentence" in violation of his due process rights. Dkt. 17, p. 6. The jury found that Petitioner used a knife in commission of the aggravated assault crime. On appeal, Petitioner argued that the Double Jeopardy Clause

of the Fifth Amendment permitted application of the enhancement statute only when a firearm was used, because the enhancement statute language mentioned only firearms and not other deadly weapons. The majority opinion rejected the claim because the sentencing enhancement statute "does not implicate double jeopardy because it does not prescribe a second crime." State's Lodging D-8, p. 8.

The dissenting justice agreed with Petitioner:

> On its face, the final sentence of section 19-2520, "[t]his section shall apply even in those cases where the use of a firearm is an element of the offense," appears to clearly authorize cumulative punishments when a person is convicted of one of the underlying offenses where use of a firearm is an element of that offense. However, the statute does not include an analogous provision for cases where the use of a non-firearm deadly weapon is an element of the offense. I would hold that the Legislature's failure to include any mention of a non-firearm in the final sentence is dispositive. *State v. Michael*, 111 Idaho 930, 933, 729 P.2d 405, 408 (1986) ("When a statute enumerates the areas which are to be encompassed in its enforcement, it is generally accepted that those areas not specifically mentioned are not to be included.").

*Id.*, p. 11 (Wiebe, Justice Pro Tem, dissenting).

Although Petitioner characterizes his claim as one that the Idaho Supreme Court "failed to follow its own law," which is a noncognizable claim, the record reveals that a more accurate characterization is that the Idaho Supreme Court rejected Petitioner's interpretation of state law *on a particular federal ground*—the Eighth Amendment. Petitioner did not challenge the state statutory scheme on Fourteenth Amendment due process grounds, as he does here (which means a due process claim is procedurally defaulted). Notwithstanding the procedural default, the Court concludes that the claim fails

MEMORANDUM DECISION AND ORDER - 6

on the merits.

As noted above, federal habeas relief is not available for errors of state law, and federal courts cannot "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67– 68 (1991). "When, however, a state statute creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). The due process analysis is two-fold: "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Id*. at 219.

The Due Process Clause is not implicated here because Petitioner has no federal right to not be sentenced under the two statutes that the Idaho Supreme Court deemed applicable to his conviction and the facts of his case. *See, e.g., Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (petitioner's claim that state law mandated a merger of convictions for sentencing was exclusively concerned with state law and therefore not cognizable in a federal habeas corpus proceeding). Because there is no liberty interest in the manner in which Petitioner was sentenced, he may not bring a due process claim.

However, there are several exceptions to the rule that a litigant may not transform a state law issue into a federal one merely by asserting a violation of due process. *See Langford v. Day*, 110 F.3d 1380, 1380 (9th Cir.). *cert. denied*, 522 U.S. 881 (1997).

One exception under which a federal habeas court is not bound by a state's construction of state law is when it appears that the state court's interpretation is an obvious

subterfuge to evade the consideration of a federal issue. *Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11 (1975). In Petitioner's case, the Idaho Supreme Court relied in part on United States Court precedent to hold that the weapon enhancement is not a separate crime and therefore does not implicate the Double Jeopardy Clause—*United States v. Watts*, 519 U.S. 148, 154-55 (1997); *Witte v. United States*, 15 U.S. 389, 402-03 (1995). Because the Idaho Supreme Court clearly addressed the statute on federal constitutional grounds, Petitioner's argument that it relied on a *state ground* to avoid later federal review of its decision is groundless. The Idaho Supreme Court is well-aware that its federal constitutional decisions are reviewable by federal courts under 28 U.S.C. § 2254. It did not rely solely on a state ground, but on a clearly-reviewable federal ground.

Another exception permitting a federal court to review a state law is when a state court statutory interpretation is "untenable," meaning "incapable of being maintained or supported."[1] *Taylor v. Kincheloe*, 920 F.2d 599, 609 (9th Cir. 1990). That is not the case here. The Idaho Supreme Court reviewed both United States Supreme Court precedent and its own precedent to reaffirm that there is a clear distinction between statutes setting forth crimes and those setting forth punishments. Simply because one state justice dissented, disagreeing with the interpretation of the majority opinion does not mean that the reasoning of the majority was untenable. Neither can this Court review whether the Idaho Supreme Court's decision was untenable under a due process analysis, because Petitioner did not present that theory and thus there is no Idaho Supreme Court due process analysis to

---

[1] Oxford English Dictionary online, http://dictionary.oed.com, *untenable* (2d. ed. 1989).

review.

Another exception allowing federal review of a state statute is when a state sentence is "based on [a] proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency"; otherwise, "the penalties for violation of state statutes are matters of state concern." *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976). Petitioner has not shown that his sentence is based on a proscribed federal ground, such as those set forth in *Makal, supra*.

Petitioner is mistaken in citing to *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384 (1990), as "clearly established law" governing this claim. Dkt. 1, p. 39. The holding of that civil case is that "an appellate court should review the district court's decision *in a Rule 11 proceeding* for an abuse of discretion." *Id*. at 409 (emphasis added). Petitioner points to the Supreme Court's observation in *Cooter* that a "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id*. at 405. Habeas corpus review does not involve the "abuse of discretion" standard of law.

Petitioner also makes a slightly different due process argument that is inapplicable to the facts here—that the state forced him to prove that the statute permits a sentencing enhancement for use of a knife, which shifted the burden of proof in a manner that violates his federal due process rights under *In re Winship*, 397 U.S. 358, 364 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 703 (1975). This clearly is not the case from the record. The State bore the burden of proof at trial to show that Petitioner used a deadly weapon in commission of the aggravated assault count; the victims testified Petitioner had a knife,

MEMORANDUM DECISION AND ORDER - 9

and Petitioner chose not to testify to contradict their stories; the jury was properly instructed; and the jury found Petitioner guilty, having considered all of the elements of the crime. *See* State's Lodging A-2, pp. 325-26.

There was no separate retrial of that factual finding by the jury in the sentencing phase of proceedings. Rather, the trial court noted before sentencing: "Now, the evidence that was presented at trial certainly established that Mr. Passons had displayed a deadly weapon in the commission of the offense which was the aggravated assault. The jury has made that finding and the Court would similarly make that finding." *Id.*, p. 325, 331. No objection was made either time the trial judge said it was making that finding for purposes of the weapon enhancement decision. *Id.*, p. 326, 331. Therefore, use of a deadly weapon was not a disputed fact at the sentencing stage, and both Petitioner and the State had equal opportunity at sentencing and on direct appeal to argue their point of view as to the legal interpretation of the statute to be applied to the facts found by the jury. Therefore, the *Winship* due process argument fails.

Even if Petitioner believes the application of the enhancement to his sentence was erroneous, federal courts have "long recognized that 'a mere error of state law' is not a denial of due process." *Swarthout*, 562 U.S. at 222; *see also Waddington v. Sarausad*, 555 U.S.179, 192 n.5 (2009). Because there is no due process liberty interest inherent in Petitioner's claim, the state court reasoning is not untenable, the grounds for the punishment are not proscribed by federal law, and there is no obvious subterfuge to avoid federal review evident in the Idaho Supreme Court's double jeopardy decision, this Court cannot simply use the banner of "federal due process" to review the interpretation of

MEMORANDUM DECISION AND ORDER - 10

Idaho's sentencing scheme.

This Court is bound by the state court's interpretation of state law because it is a matter of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The Court concludes that this claim is both procedurally defaulted and noncognizable under *Swarthout* and the other precedent cited above. The Court also concludes that no exception applies to permit the Court to review the state court's interpretation of state law, and, therefore, alternatively, construed as a federal due process claim, it fails on the merits. Claim 1 will be dismissed with prejudice on the merits; therefore cause and prejudice or actual innocence arguments need not be entertained.

### B. Discussion of Claims 5(b) and 5(c)

Claims 5(b) and 5(c) are that trial counsel, Brad Chapman, performed ineffectively (1) by "failing to secure" the Walmart surveillance video of the parking lot where the victims say Petitioner displayed a knife to escape and (2) by "failing to gather information from the investigator" to support Petitioner's defense. Dkt. 17, p. 6. Respondent construed this claim as one complaining of the services of *standby* counsel, because that is the capacity in which Chapman was acting when he failed to help Petitioner secure the video. The security camera stored 90 days' worth of video footage before being overwritten, and Petitioner asked standby counsel at the preliminary hearing—when six days remained before the video was to be overwritten—to assist him in obtaining the footage. State's Lodging F-1, p. 15.

However, Petitioner clarified in his reply that he is complaining about the services of Chapman acting as *trial* counsel but then proceeded to argue the claim both ways. Dkt.

26. Petitioner's state post-conviction claims simply said "counsel," not standby or trial counsel. *See* State's Lodging E-1. The Court will construe the claim both ways here.

i.   Trial Counsel

Petitioner's direct appeal counsel did not raise in the Idaho Supreme Court the question that *trial* counsel failed to obtain the surveillance video likely because, according to the timeline for automatic overwriting of the security video, that window of opportunity closed while Chapman was still stand-by counsel. *See* State's Lodging F-1, p. 15. Once Chapman became trial counsel, the video already had been overwritten.

Petitioner's counsel raised only the claim that *standby* counsel failed to help Petitioner obtain the video. Therefore, the *trial* counsel claim is procedurally defaulted. Petitioner's assertion that because Mr. Chapman served *both* as standby counsel and later as counsel of record, his standby counsel performance should be merged with his trial counsel performance and judged under the ineffective assistance of counsel standard is unsupported by federal precedent. Therefore, this claim is subject to dismissal for failure to state a federal claim upon which relief can be granted.

Petitioner further asserts that Chapman failed to gather information from the investigator to support Petitioner's defense. The state district court rejected the claim on post-conviction review:

> Petitioner contends his trial counsel was ineffective for failing to locate and call Rachel Passons in order to testify that he had money thereby negating a motive to steal. Petitioner has set forth no authority indicating that one with money could not have the motive to steal…. Even if the trial decision to not call Rachel as a witness was below an objective standard of reasonableness, Petitioner has failed to sufficiently

demonstrate corresponding prejudice.

State's Lodging E-3, p. 9. Petitioner also asserted that a large sliver carabiner on his key chain could have been mistaken for a knife, and his daughter could have produced the key chain. State's Lodging E-9, p. 654. He asserts that Chapman should have found Petitioner's daughter and brought her forward to testify and produce the key chain. Petitioner has never shown why he could not have produced his own daughter during the time he represented himself, nor—to this Court's knowledge—did he ever produce to the state courts an affidavit signed by his daughter showing that her testimony would have been helpful to the defense. Petitioner's daughter could not have testified about Petitioner's statement to her if the statement is intended to bolster his case, nor could she have testified what his intentions were, without relying on inadmissible hearsay. Therefore, no prejudice arose from counsel's failure to contact Rachel Passons to testify.

As to Petitioner's set of keys that Rachel Passons might have been able to produce, the keys would not have directly impacted the evidence that *was* presented. The keys that were attached to the right side of Petitioner's pants were visible in the video clips of him entering and exiting the store. The video clips were presented to the jury, though it is unknown what level of detail was visible. *Id*., p. 202. Victim Matthew Erlandson testified that the knife was *not* the keys, and that the knife was "a retractable or folding" type of knife that came from Petitioner's right pocket while the keys were still attached to the outside of his pants. *Id*., p. 170, 197-198, 204.

Producing the keychain to show that it did not have a knife attached or was not

itself a knife would have bolstered the State's case, because it matched Erland's testimony that the knife was not attached to a keychain when it was pointed at him but was a single item produced from a different place. It would have been unlikely that the jury would have believed that Petitioner could have quickly detached the carabiner from his pants *and* detached the keys from the carabiner to point the carabiner at the victims while pushing the shopping cart and being pursued.

In addition, the evidence at trial shows that the timing of the display of the knife in conjunction with the content of Petitioner's words to the victims corroborates that Petitioner produced a knife to dissuade them from continuing to follow him in the parking lot. Erlandson testified that, when Petitioner displayed the knife, he said, "I ain't stopping for shit. Fuck you," "You can't touch me," and the other victim's testimony was similar. State's Lodging, E-9, pp. 169, 208. It is unlikely that a perpetrator would use these words and display a carabiner or a set of keys to stop the pursuit.

And, even if Petitioner attempted to bring forward new evidence in support of the merits of his claim today, the Court very likely could not consider it. Petitioner is not permitted to produce new facts or evidence not previously presented to the state courts if his excuse for not having done so is to blame post-conviction counsel. *See* 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 142 S.Ct. 1718, 1734, 1739-40 (2022) (holding that counsel's fault in failing to produce evidence in state court is attributable to their clients and does not satisfy 28 U.S.C. § 2254(e)(2), and that the federal courts "have no warrant to impose any factfinding beyond § 2254(e)(2)'s narrow exceptions to AEDPA's general

bar on evidentiary hearings" (citation omitted, punctuation altered).

On these facts, the Court alternatively will deny this Sixth Amendment trial counsel claim on the merits for lack of prejudice to his case.

ii.    Standby Counsel

As noted above, Petitioner was initially represented by public defender Brad Chapman, but later moved to represent himself. State's Lodging A-1, pp. 20, 35-37. Chapman remained on the case as stand-by counsel. *Id*., p.41; F-4, p. 2. Petitioner then complained about the limited resources of pro se representation, and the trial court strongly recommended that Petitioner reconsider the benefits of having counsel, to which Petitioner agreed. State's Lodgings A-1, pp. 95-97; F-4, p. 2. Chapman represented Petitioner at trial. State's Lodgings A-1, pp. 213-36; A-2, pp. 6-329.

Respondent has supplied various case law showing that these claims, construed as "ineffective assistance of *standby* counsel claims" are noncognizable. Criminal defendants do not have a right to "hybrid" legal representation *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984); *see also U.S. v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995). Stated differently, "there is no right to the assistance of standby counsel." U.*S. v. Mendez-Sanchez*, 563 F.3d 935, 947 (9th Cir. 2009) (relying on *Wiggins*). When a defendant has no constitutional right to counsel, he cannot be deprived of ineffective assistance of counsel. *See Wainwright v. Torna*, 455 U.S. 586, 588 (1982); *see also Coleman*, 501 U.S. at 752.

As mentioned above, Petitioner argued in his post-conviction petition that, because the same standby counsel later became appointed full-time counsel, counsel should be charged with the ineffectiveness that occurred during the time he was serving as standby

counsel. State's Lodging E-8, p. 71. There is no precedent to support such an extension of the law in the federal habeas corpus context.

Based on existing precedent, the Court agrees that standby counsel's performance is not subject to an ineffective assistance of counsel claim. Therefore, Claims 5(b) and 5(c) will be dismissed with prejudice as noncognizable.

### 3. Discussion of Procedural Default Argument

Respondent asserts that Claims 3(a) to (3)(e) are procedurally defaulted because they were never presented to the Idaho Supreme Court. He further asserts that Claims 4(a) and 5(a) are procedurally defaulted because they were dismissed by the state courts on adequate and independent state procedural grounds.

### A.   *Claim 3(a) Background*

Claim 3(a) alleges a Sixth Amendment "unfair trial" claim based on the trial court's ruling on Rule 404(b) evidence—that "next-day bad acts" should not have been admitted. *See* State's Lodging B-2, p. 15. The day after Petitioner fled the Post Falls Walmart with the baby stroller but without the television, he asked Desiree Stock, a friend he had met earlier that day, to attempt to return the baby stroller to the Ponderay Walmart store. She was unable to return it; Walmart employees followed them into the parking lot; and eventually, police officers followed and stopped them. State's Lodging A-2, pp. 226-231.

On direct appeal, Petitioner labeled and argued this claim under state evidentiary law and the state-law abuse-of-discretion standard, but also argued that it should be deemed harmful error because a "constitutional" violation occurred. State's Lodgings B-2, pp. 13-

22; B-7, pp. 22-23. The Idaho Court of Appeals determined that the evidence was prejudicial, but not unfairly so, and denied the claim. State's Lodgings B-5, p. 7.

### B.  Claim 3(b) and 3(c) Background

Claim 3(b) is that the court's denial of a mistrial motion, after a venire person made statements about Petitioner's tattoos and presumed criminal history, violated his right to a fair trial under the Sixth Amendment. The claim is based on the following.

| MS. COOK: | [I]f he's a defendant, I work in a bar. He's already covered in tattoos. He's been in and out of jail more than I can count. Those aren't normal tattoos that people just get for decoration. I've already formed an opinion of him. I honestly don't think I can give him a fair trial. |
|---|---|
| THE COURT: | Well, I don't know that I agree with your conclusions, but that's not important. I appreciate you offering that and you being —— |
| MS. COOK: | I know about the difference between decorative and —— |
| THE COURT: | That's quite all right. Thank you very much, Ms. Cook. Why don't you go ahead and step down and I will excuse you. |

State's Lodging E-9, pp. 19-20.

Petitioner's counsel moved for a mistrial, citing prejudice to the entire panel as a result of Ms. Cook promoting herself an expert in tattoo identification and asserting that Petitioner had been in and out of incarceration numerous times, all in the presence of the

whole jury panel. *Id*., pp. 78-79. The trial court denied the motion. "I'm not satisfied that it's so extreme that comments by Ms. Cook, who is not a witness but simply a juror, has created an environment that Mr. Passons would not otherwise be entitled to a fair trial." *Id*., p. 85.

Claim 3(c) is that the court violated Petitioner's right to a fair trial under the Sixth Amendment after it denied Petitioner's mistrial motion based on an officer wrongly testifying that Petitioner had committed a robbery. *See* State's Lodging B-2, p. 23. In particular, Officer Heberer testified that she was on patrol and became involved in pursuit of a vehicle. The prosecution asked, "What was going on during the pursuit?" The officer stated, "We were following a suspect from a robbery that occurred." *Id*., pp. 232-234.

The court sustained an objection, and Petitioner's counsel moved to declare a mistrial because the word "robbery" was inaccurate and inflammatory and deprived Petitioner of his "right to a fair trial." *Id*., pp. 234-237. The prosecutor argued he did not solicit the information about a robbery and urged a corrective instruction. The Court denied the motion for a mistrial and instructed the jury:

> I want to instruct you that there was no robbery. There has been no robbery charged, nor is Mr. Passons a suspect in a robbery at the relevant time in question here. So I just want to make sure the jury is very well aware of that.

State's Lodging B-2 (citing transcript).

Petitioner's counsel raised Claims 3(b) and 3(c) on direct appeal, stating generally that Petitioner "was deprived his due process right to a fair trial," State's Lodging B-2, p. 23, and more particularly citing the Fifth and Fourteenth Amendment of the United States

Constitution. *Id.*, pp. 23-28.

The Idaho Court of Appeals cited Idaho Criminal Rule. 29.1 in its opinion: A "mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." *Id.*, pp. 7-8. Petitioner did not raise, and the Idaho Court of Appeals did not address, a Sixth Amendment claim. *See* State's Lodgings B-2, B-4, & B-5.

### C. Discussion of Evidentiary "Fair Trial" Claims

Respondent argues that the Sixth Amendment claim is procedurally defaulted. Petitioner counters that the federal district courts often construe a "due process right to a fair trial" claim that was brought only as a state law claim in state court to be sufficient to state a federal constitutional claim because the standards of law are coextensive. In *Herrera v. Tewalt*, Judge B. Lynn Winmill reasoned:

> Reviewing Petitioner's appellate briefing, the Court finds, at first glance, that his reference to the Fourteenth Amendment seems to be merely a "drive by citation, detached from any articulation of an underlying federal legal theory." Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005). The reply brief vaguely states that the conviction and sentence "violate the Fourteenth Amendment and must be vacated." (State's Lodgings B-24, p. 2; B-6, B-24.)

> However, a deeper look shows that this is an instance where "the state-law rule subsumes the federal standard—that is, if a state law rule is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

MEMORANDUM DECISION AND ORDER - 19

Case No. 1:15-cv-00525-BLW, Dkt. 70, pp. 23-24. Similarly, in *Kipp v. Davis*, 971 F.3d 939 (9th Cir. 2020), the Ninth Circuit court reasoned: "it is 'difficult to imagine' the [state supreme court] 'announcing an interpretation of' [its state evidentiary rule] 'that it believed to be less protective than' the Fourteenth Amendment, 'as any such interpretation would provide no guidance to state trial judges bound to follow both state and federal law.'" *Id*. at 951 (citations omitted).

Here, the Court will permit Petitioner to proceed on his "fair trial" claims under the Sixth Amendment and the Fourteenth Amendment. The United States Supreme Court has stated that "[t]he Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 684–85, (1984). Petitioner's references to "fair trial," "unconstitutional," "harmful error," and the Fourteenth Amendment are enough in the context of complaining about evidentiary rulings that made his trial unfair. The Court will deem Claims 3(a), 3(b), and 3(c) decided on the merits in state court, which subjects them to the AEDPA standard of review.

As to juror claims such as Claim 3(b), the law is clear that the Sixth Amendment right to jury trial guarantees a criminal defendant a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Skilling v. United States*, 561 U.S. 358, 377–78 (2010). Petitioner will bear the burden to show that the ruling as to Ms. Cook's statement in front of the entire jury panel was contrary to, or an unreasonable application of, United States Supreme Court precedent governing the right to a fair trial.

As to admissions of objectional evidence such as Claims 3(a) and 3(c), the law is

clear that "[a] federal habeas court [ ] cannot review questions of state evidence law." *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). A federal habeas court "may consider only whether the petitioner's conviction violated constitutional norms." *Id*. (citing *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)). The general test is "whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process." *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (quoting *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998)).

As to Claim 3(c), "[i]f the trial court gives the jury a curative instruction, it is presumed the jury will follow that instruction and disregard inadmissible evidence inadvertently presented to it." *Greer v. Miller*, 483 U.S. 756, 766, n. 8 (1987). And, even where there was error, the error is subject to a harmless error analysis before habeas corpus relief can be granted.

A federal habeas court reviewing alleged constitutional error in a state court trial must determine whether an alleged error had a "substantial and injurious effect or influence in verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Both the *Brecht* standard and AEDPA's deferential standard must be met to warrant habeas corpus relief. *Brown v. Davenport*, 142 S.Ct. 1510 (2022). That is, under AEDPA, the admission of clearly erroneous evidence that renders a trial fundamentally unfair does *not* warrant federal habeas corpus relief unless the admission of evidence is "forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Thus far, the Supreme Court has not "made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation

sufficient to warrant issuance of the writ." *Id*. Without a Supreme Court holding on the "potentially prejudicial effect" of the same type of evidence admitted in a habeas petitioner's case, or precedent requiring the state court to apply a specific test or rule a certain way, a state court's ruling cannot be contrary to, or an "unreasonable application" of, clearly established Federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

### D.  Claim 3(d)

Claim 3(d) is that the accumulation of errors so infected the jury that Petitioner was not afforded a fair trial under the Sixth Amendment. He raised this claim on direct appeal under the Fourteenth Amendment: "Even if the errors are individually harmless, was Mr. Passons' Fourteenth Amendment right to due process of law violated because the accumulation of errors deprives him of his right to a fair trial?" State's Lodging B-2 p. 12. In the body of his appellate briefing, however, he cited only *State v. Ellington*, 253 P.3d 727, 743 (2011), and *State v. Perry*, 150 Idaho 209 (2010). *See* State's Lodging B-2, p. 28. However, *Ellington* reasoned that, under both United States Supreme Court and Idaho Supreme Court case law, Mr. Ellington "has not overcome the presumption that the jury was impartial," given that a "criminal defendant has a constitutional right to trial by an impartial jury. U.S. Const. amends. V, VI, XIV." 253 P.3d at 743.

This Court concludes that, because Petitioner raised the claim under the Fourteenth Amendment's Due Process Clause (through which the Sixth Amendment is applied to the states), because he relied on state case that cited United States Supreme Court precedent, and because the standards appear coextensive, the claim is not procedurally defaulted, but it will be heard as a Fourteenth Amendment Claim.

MEMORANDUM DECISION AND ORDER - 22

The United States Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Chambers v Mississippi*, 410 U.S. 284, 290 n. 3, 298, 302-03 (1973). The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive," *Chambers*, 410 U.S. at 294, and thereby had a "substantial and injurious effect or influence" on the jury's verdict*, Brecht*, 507 U.S. at 637 (internal quotations omitted). *See, e.g., Killian v. Poole*, 282 F.3d 1204 (9th Cir. 2002) (cumulative trial errors required grant of relief).

### E.  Claim 3(e)

Claim 3(e) asserts a violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988), alleging the state destroyed exculpatory evidence. *See* Dkt. 17, p. 8. This claim is based on the decision of Mr. Erlandson, one of the Walmart employee victims, to not preserve the otherwise- automatically-overwritten security video of the parking lot incident because it allegedly had too much glare from the sun. Instead, the State presented a different Walmart surveillance video, Exhibit 1 containing 13 separate clips, taken from multiple cameras, generally showing Petitioner's actions entering, moving about, and exiting the store.

This claim was never raised as a *Youngblood* claim in any of Petitioner's appeals. Rather, he raised the underlying facts as an ineffective assistance of counsel claim. *See* State's Lodgings B-2, B-4, B-7, D-1, D-3, D-6, F-1, F-3, & F-6. Petitioner's assertions in state court that trial counsel or standby counsel were ineffective in failing to secure the

video footage before it was destroyed is *not* the same claim as one that government actors purposely destroyed exculpatory evidence. The *Youngblood* court "h[eld] that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." There is no evidence in the state court record that government actors acted in bad faith or even had anything to do with the destruction of the Walmart outdoor surveillance video, which was overwritten because Walmart employees could not see anything useful on the video clip because of the glare of the sun. Claim 3(e) is procedurally defaulted but will be alternatively denied on the merits and dismissed with prejudice.

### F. Claim 4(a)

Claim 4(a) is that Petitioner's *Faretta* right to represent himself was impaired because he was denied paper, pens, an investigator, and funding for his defense. *See* Dkt. 26, p 7. A criminal defendant has a Sixth Amendment right to waive counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 807 (1975).

Petitioner presented this "lack of pro se resources" claim as part of the facts underlying a *Faretta* claim on post-conviction *appeal* without first having presented that factual basis to the state district court. *See* State's Lodging F-1, pp.10-11. Petitioner set forth the facts on post-conviction appeal as follows:

> After Mr. Passons was bound over to the district court, he filed a motions and kites seeking time in the law library, legal supplies such as paper, telephone access and an investigator. more than one hour of law library time and legal supplies, including more than the six sheets of paper a week he was then allotted. R. 20-22; Exhibits, p. 421-422, p. 434-435, p. 660 (Clerk's Record No. 41288).

MEMORANDUM DECISION AND ORDER - 24

> Two weeks later, at Mr. Passons' arraignment, the district court
> failed to address Mr. Passons' requests for the means to
> meaningfully represent himself, the district court Exhibits, p.
> 456-58 (Clerk's Record No. 41288). Instead, the district court
> dissuaded Mr. Passons from continuing with self-
> representation and appointed the public defender without
> inquiring whether Mr. Passons' waiver of his right to represent
> himself was knowing and voluntary. R. 134.

State's Lodging F-1, p. 11.

Respondent argues that the Idaho Court of Appeals dismissed this claim after applying a clear, consistently applied, and well-established state bar, concluding that Petitioner had not preserved the claim for appeal because he did not raise a substantive *Faretta* claim specifically focused on "denial of resources" in the state district court. State's Lodging F-4, p. 4.

This Court agrees that this claim is procedurally defaulted because it was dismissed on state appellate review based on application of a clear, consistently-applied, and well-established state procedural bar. Idaho appellate courts generally will not consider arguments made for the first time on appeal. *See Row v. State*, 21 P.3d 895, 902 (Idaho 2001) ("The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal."). Petitioner has not shown that this procedural rule was unclear, inconsistently applied, or not well-established at the time of the default. *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001).

Turning to the merits of the claim, and, in particular, the prejudice prong of the

*Strickland v. Washington* ineffective assistance test,[2] the Court finds that the record reflects that only a few weeks went by before Petitioner agreed with the trial judge that having representation would be better than representing himself—"you convinced me – can I get him [Brad Chapman, the public defender] appointed to represent me again?" State's Lodgings A-1, p. 95; F-1, p. 7. Petitioner has not pointed to any prejudice to his defense to support a cause and prejudice showing, or harmful error for a merits showing, resulting from his lack of legal supplies during his short pro se representation. Petitioner was aware of the Walmart video before it was overwritten and has not shown that he could not have orally moved the Court to order its preservation without any of the supplies or aid mentioned. Claim 4(a) will be dismissed on procedural default grounds and alternatively denied on the merits and dismissed with prejudice.

### G.   Claim 5(a)

Claim 5(a) is that trial counsel rendered ineffective assistance under the Sixth Amendment by not requesting a jury instruction on spoliation. Dkt. 17, p. 8. On post-conviction appeal, Petitioner asserted that "counsel did not request an instruction telling the jury that the lack of a DVD of the critical, decisive interaction" allows them to infer that the evidence was favorable to Petitioner. *See* State's Lodging F-1, pp.16-17.

On appeal, the Idaho Court of Appeals stated:

Passons alleged his trial counsel was ineffective for failing to

---

[2]       The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id.* at 684.

> request a jury instruction on spoliation based on the
> employees' failure to preserve the surveillance footage they
> said was whited out. The district court found there was no
> evidence that the destruction was intentional, as opposed to
> negligent, and thus did not satisfy one of the requirements for
> a spoliation instruction. *See Courtney v. Big O Tires, Inc*., 139
> Idaho 821, 824, 87 P.3d 930, 933 (2003). In addition, we note
> that spoliation instructions are not appropriate when a third
> party unconnected to the litigants destroys the evidence, *see
> id*., and that Passons failed to present evidence connecting the
> employees' actions to the State as a party in the underlying
> criminal case. In any event, Passons presents no argument or
> authority showing that the district court erred in its analysis, so
> the issue is waived on appeal. *See Powell*, 130 Idaho at 128,
> 937 P.2d at 440.

State's Lodging F-4, p. 9.

There are adequate grounds to conclude that the claim is procedurally defaulted

based on a clear, consistently-applied, and well-established state bar: the requirement that

parties support their claims with argument and authority. *See Powell v. Sellers*, 937 P.2d

434, 440 (Idaho Ct. App. 1997); *Zichko v. Idaho*, 247 F.3d 1015, 1021-1022 (9th Cir. 2001)

(recognizing this procedural bar as clear, consistently applied, and well established in

Idaho).

However, the state court record can also be interpreted to show that this claim was

alternatively decided on the merits by the Idaho Court of Appeals, rejecting it because there

was no evidence suggesting that the Walmart employee who destroyed the video was

intentional rather than negligent or that the employee acted on behalf of, or was connected

to, the State, such that a motion by trial counsel would have been warranted or granted.

Without a showing that a party *and* bad faith were involved in the loss of the video footage,

counsel could not have performed ineffectively, nor could there be prejudice. Therefore,

MEMORANDUM DECISION AND ORDER - 27

the Idaho Court of Appeals' adjudication of Petitioner's claim, which is not based on bad faith of a party, fails on the merits.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Extension of Time to File Answer or Pre-Answer Motion (Dkt. 20) is GRANTED.

2. Respondent's Motion for Partial Summary Dismissal (Dkt. 22) is GRANTED in part and DENIED in part, as follows:

   a. Claim 1, the sentencing enhancement claim, is noncognizable; alternatively, construed as a federal due process claim, it fails on the merits. It will be dismissed with prejudice.

   b. Claim 3(e), the *Youngblood* claim, is procedurally defaulted and alternatively will be denied on the merits and dismissed with prejudice.

   c. Claim 4(a), the denial of pro se resources, is procedurally defaulted and alternatively denied on the merits and dismissed with prejudice

   d. Claim 5(b) and 5(c) are noncognizable as standby counsel ineffective assistance claims; alternatively, construed as ineffective assistance of trial counsel claims, they fail on the merits. They will be dismissed with prejudice.

   e. Claim 3(a), 3(b), and 3(c), about prejudicial trial court evidentiary rulings, may proceed as Sixth/Fourteenth Amendment fair trial claims.

3. Claim 3(d), asserting cumulative error, may proceed as a Fourteenth Amendment due process claim.

4. Claim 5(a), regarding failure to request a spoliation instruction, is procedurally defaulted and alternatively fails on the merits. It will be dismissed with prejudice.

5. Petitioner's Motion for Application of *Martinez* and *Haines* (Dkt. 25), regarding procedural default excuses and liberal construction of pro se pleadings, is MOOT, except to the extent that the Court has construed Petitioner's claims liberally as set forth herein.

6. Petitioner's Response, docketed as a "motion," is GRANTED in part and DENIED in part, as set forth above.

7. **Respondent shall lodge missing pages 238-245 of the trial transcript with the Court within 60 days after entry of this Order.**

8. Respondent shall file an answer to the remaining claims **within 60 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer. Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

9.  No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

10. No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

DATED: August 1, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 30