UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUSSELL ALLEN PASSONS, | Case No. 1:18-cv-00344-DCN |
| Petitioner, | **MEMORANDUM DECISION** |
| vs. | **AND ORDER** |
| JAY CHRISTENSEN, | |
| Respondent. | |

## INTRODUCTION AND PRELIMINARY MOTIONS

Previously in this matter, the Court dismissed several of Petitioner Russell Allen Passons' claims on procedural grounds: Claims 1, 3(e), 4(a), 5 (a), 5(b), 5(c). Dkt. 30. Petitioner was permitted to proceed to the merits of the following claims in his Amended Petition for Writ of Habeas Corpus (Dkt. 17): 2, a double jeopardy violation; 3(a), 3(b), and 3(c), prejudicial trial court evidentiary rulings, characterized as Sixth/Fourteenth Amendment fair trial claims; 3(d), cumulative error, brought as a Fourteenth Amendment due process claim; and 4(b), trial court error in not conducting an adequate inquiry into Petitioner's waiver of the right to self-representation. Respondent has filed an Answer requesting denial of these claims. Dkt. 37. Petitioner has filed a Traverse/Reply. Dkt. 41. The Court has considered these filings.

The Court notified Petitioner that it had a potential conflict of interest in cases where the Idaho attorney general's office represents the Respondent, including this one. Dkt. 42.

MEMORANDUM DECISION AND ORDER - 1

Petitioner filed a waiver of any conflict of interest. Dkt. 43.

Petitioner has requested copies of various cases cited by Respondent. Dkt. 35. However, the law does not provide for free copies of case law to indigent prisoners; therefore, the motion will be denied. However, the Court has revisited the cases Petitioner requested to determine whether any has particular application to Petitioner's claims.

Most of the cases explain the law of procedural default, which is not applicable here. For example, *Swarthout v. Cooke*, 562 U.S. 216 (2011) stands for the proposition that federal habeas relief does not lie for violations of state law. Because the Court has construed Petitioner's claims liberally as federal claims, *Swarthout* is inapplicable here.

The case, *Langford v. Day*, 110 F.3d 1380 (1996), holds that a petitioner "may not transform a state-law issue into a federal one merely by asserting a violation of due process"' that case is also inapplicable because this Court has liberally construed Petitioner's state law fair trial claims as federal due process fair trial claims. *Holley v. Yarborough*, 568 F.3d 1091 (9th Cir. 2009), stands for the same principle as *Langford*.

The Court will address below the principle that "state courts are the ultimate expositors of state law," and federal courts "are bound by the state's construction except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue." *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994), relying on *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975).

Petitioner's last request is for a copy of Respondent's recent lodging of certain missing pages of the record. Dkt. 39. This missing portion spanned pages 238-45 from State's Lodging A-2. These pages cover the second motion for a mistrial addressing the

MEMORANDUM DECISION AND ORDER - 2

officer's comment about a robbery and the court's curative instruction. Respondent has

provided copies to Petitioner, thus mooting Petitioner's motion. Dkts. 39. 40.

## BACKGROUND

On direct appeal, the Idaho Court of Appeals described the underlying facts as

follows:

> The State alleged that Passons entered a retail store in Post
> Falls and took a car seat and stroller combination (stroller)
> without paying for it and placed it in his car. Passons then re-
> entered the store, placed a television into a shopping cart, and
> again exited without paying. However, two store employees
> observed Passons exit without paying and confronted him in
> the parking lot. These employees asserted that Passons pulled
> a knife and pointed it at them and then ran to his car and drove
> away, leaving the television in the shopping cart.

State's Lodging B-5, pp.1-2.

At trial, Desiree Storck, an acquaintance of Petitioner, testified that Petitioner asked

her to try to return the stroller to a different Walmart store. This occurred the day after

Petitioner had stolen the stroller. Walmart did not accept the return, and Walmart security

staff were watching them and wrote down Petitioner's license plate number after he loaded

the stroller back into his car. State's Lodging A-2, pp. 228-30. Police officers then began

pursuing Petitioner's car, and after about 25 minutes, Petitioner hit a curb, ending the

pursuit. Police officers apprehended Petitioner at gunpoint. *Id*. at 230-32.

Petitioner was charged with one count of burglary and two counts of aggravated

assault in a criminal action in the First Judicial District Court in Kootenai County, Idaho.

He was also charged with using a deadly weapon in the commission of a crime and with

being a persistent violator. State's Lodging A-1, pp. 54-56. The theme of Petitioner's

MEMORANDUM DECISION AND ORDER - 3

defense was that the employees were mistaken or lying about the presence of the knife, escalating a simple shoplifting case into a serious criminal matter with a much longer prison sentence.

Petitioner initially was represented by an attorney from the public defender's office, Brad Chapman, but Petitioner later moved to represent himself. State's Lodging A-1, pp. 20, 35-37. Chapman remained on the case as stand-by counsel. *Id*., p.41; State's Lodging F-4, p. 2. Shortly afterward, Petitioner complained about his limited pro se resources, and the Court strongly encouraged Petitioner to allow Chapman to represent him; Petitioner agreed. State's Lodgings A-1, pp. 95-97; F-4, p. 2. Chapman represented Petitioner at trial. State's Lodgings A-1, pp. 213-36 & A-2, pp. 6-329.

Witnesses for the prosecution included Desiree Storck, several Walmart employees (including the victims), and a law enforcement officer. *See* State's Lodging A-2. Before concluding the trial, the judge carefully reviewed with Petitioner whether he understood he had the right to testify and the right to remain silent, and that it was his choice, not his attorney's choice, to testify or remain silent. *Id*., pp. 254-56. Petitioner chose to remain silent, and his attorney called no witnesses to testify on his behalf. *Id*. at 254-256.

The jury found Petitioner guilty of burglary and both counts of aggravated assault. State's Lodgings A-1, p.273 & A-7, pp. 296-297. Petitioner waived his right to a jury trial on the two sentence enhancements. State's Lodging A-7, pp. 302-05. The trial court found the State had proved the deadly weapon enhancement on one count but did not prove the persistent violator enhancement. State's Lodgings A-1, p. 303; A-2, pp. 325-339. Petitioner was sentenced to five years fixed for the first assault count; ten years fixed with twenty

years indeterminate for the second assault count (including the deadly weapon enhancement); and five years fixed with ten years indeterminate for the burglary count, all to run concurrently. State's Lodging A-1, pp. 315-17.

## STANDARD OF LAW ON HABEAS REVIEW

### 1.   AEDPA Deferential Review Standard

Federal habeas corpus relief may be granted where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A challenge to a state court judgment that addressed the merits of any federal claims is governed by Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

The AEDPA limits relief to instances where the state court's adjudication of the petitioner's claim:

    1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

To assess whether habeas corpus review is warranted, the federal district court reviews "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 40 (2011). The deferential standard of § 2254(d) applies regardless of whether the state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied."

*Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion as the grounds for denial. 28 U.S.C. 2254(d).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011); 28 U.S.C. §2254(e)(2). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim (1) was adjudicated on the merits in state court and (2) the underlying factual determination of the state court is not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014). In such case, a "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner must show, by clear and convincing evidence, that the factual findings are not just erroneous, but unreasonable, in light of the evidence presented to the state courts. 28 U.S.C. § 2254(e)(1); § 2254(d)(2).

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts may not grant relief under § 2254(d)(1) in instances where a state court failed to *extend* precedent to cover a new factual circumstances. *White v. Woodall*, 572 U.S 415, 426 (2014).

In addition, the United States Supreme Court has explained the limited reach of § 2254(d)(1):

> Because Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect," a federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams*, 529 U.S. at 365. *See also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Cone*, 535 U.S. at 694.

The "unreasonable application" standard has been explained in the following terms: if fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Richter*, 562 U.S. at 101. The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id*. (internal citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

### 2. De Novo Review Standard

In some instances AEDPA deferential review under § 2254(d)(1) does not apply: (1) if the state appellate court did not decide a properly-asserted federal claim, (2) if the state court's factual findings are unreasonable under § 2254(d)(2), or (3) if an adequate excuse for the procedural default of a claim exists. In such instances, the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). As in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1), the federal district court may consider evidence

outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

## DISCUSSION OF CLAIMS

### 1.  Claim 2

Claim 2 is that Petitioner's right to be free from double jeopardy was violated when the state impermissibly relied on the same predicate fact—his use of a knife—to both "'elevate[]' the [assault] charge to the crime of Aggravated Assault," and to "'enhance[]' the sentence" under Section 19-2520 (containing Idaho's deadly-weapon sentence enhancement). Dkt. 17, p. 7. Petitioner asserts that he was given multiple punishments for the same underlying act of brandishing the knife, in violation of the Fifth Amendment provision that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

### A.  *State Court Proceedings*

The Idaho Supreme Court granted Petitioner's petition for review of the Idaho Court of Appeals' opinion rejecting the Fifth Amendment claim. State's Lodging D-8. The Idaho Supreme Court focused its analysis on prior state law precedent and *Missouri v. Hunter*, 459 U.S. 359, 368 (1983), where the United States Supreme Court held that additional or "cumulative" punishment imposed through two statutes that proscribe the same conduct does not violate the Double Jeopardy Clause if the state legislature has authorized multiple punishments.

The Idaho Supreme Court recognized:

> *Hunter* indicates that our consideration of double jeopardy

> through multiple punishments is predicated on two issues of legislative intent. First, the Legislature needs to have enacted multiple statutes that separately proscribe the same offense. 459 U.S. at 368, 103 S.Ct. 673. Second, assuming that punishment through each of these statutes is at stake, the Legislature must have expressly authorized for the punishments to be imposed lest their imposition constitutes double jeopardy. *Id*.

State's Lodging D-8, p. 5.

The Idaho Supreme Court distinguished the Idaho statutes governing Petitioner's case from the Missouri statute at issue in *Hunter*. The Missouri statute that focused on punishment for use of a deadly weapon stated: "[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous or deadly weapon ***is also guilty of the crime of armed criminal action*** and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years." State's Lodging D-8, p. 6 (citing *Hunter*, 459 U.S. at 362 (quoting Mo. Ann. Stat. § 560.225) (emphasis added by Idaho Supreme Court)).

In contrast, Idaho's deadly weapon punishment statute, I.C. § 19-2520, does not impose an additional criminal conviction, but simply provides that any convicted felon "who displayed, used, threatened, or attempted to use a firearm or other deadly weapon while committing or attempting to commit the crime, ***shall be sentenced to an extended term of imprisonment***" of 15 years. State's Lodging D-8, p. 7 (emphasis added by Idaho Supreme Court). The Idaho statute also provides that it "shall apply even in those cases where the use of a firearm is an element of the offense." I.C. § 19-2520.

The Idaho Supreme Court reasoned that, "[w]hen compared, the emphasized

language in each statute illustrates the crucial difference: the Missouri statute expressly prescribes a second, independent crime, whereas the Idaho statute reads solely to authorize enhancement of a sentence for an underlying crime." State's Lodging D-8, p. 7. The Idaho Supreme Court also noted that "the U.S. Supreme Court deferred to the Missouri court's construction of the statute. *Hunter*, 459 U.S. at 368, 103 S.Ct. 673."

### B.  *Analysis of Reasonableness of State Court Decision*

Clearly established law governing Petitioner's Fifth Amendment double jeopardy claim includes *Blockburger v. United States*, 284 U.S. 299 (1932), and *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). In *Blockburger*, the Court held that the "applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id*. at 304. In *Hunter*, the United States Supreme Court held that *Blockburger* does not prohibit additional or "cumulative" punishment imposed through two statutes that proscribe the same conduct if authorized by the state legislature. 459 U.S. at 368. "Legislatures, not courts, prescribe the scope of punishments," reiterated the United States Supreme Court in *Hunter*. *Id*.

Petitioner faces an uphill battle on his claim for several reasons. First, as *Hunter* reminded, federal courts defer to the state supreme court's interpretation of state statutes. The Idaho Supreme Court has consistently defined its weapon enhancement statute as a sentencing statute, not a substantive offense or separate crime. The Idaho Supreme Court explained its position in Petitioner's case using additional precedent from the United States Supreme Court:

MEMORANDUM DECISION AND ORDER - 11

> Instead of prescribing an offense, the language of the statute reveals that the Idaho Legislature has authorized courts to impose enhanced sentences when certain crimes are committed using a firearm or deadly weapon. I.C. § 19-2520. An enhanced sentence does not place the defendant in new jeopardy but instead imposes a harsher penalty for the underlying offense. *See United States v. Watts*, 519 U.S. 148, 154–55, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997)("[S]entencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." (citing *Witte v. United States*, 515 U.S. 389, 402–03, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995))); *see also Cardona*, 102 Idaho at 670, 637 P.2d at 1164 (analogizing section 19-2520 to enhancement for habitual offenders under Idaho Code section 19-2514).

State's Lodging D-8, pp. 7-8.

This Court agrees that the Idaho enhancement statute plainly does not contain language classifying use of a weapon as a crime, offense, or conviction. The Idaho Supreme Court's interpretation is a reasonable one based on the statute's express language. The Idaho statute is very clearly distinguishable from the "enhancement" statute in *Hunter* that specified the "enhancement" was actually a "crime of armed criminal action." 459 U.S. at 362.

Petitioner implies that this Court should reject the Idaho Supreme Court's interpretation of the law because it is either (1) "untenable," meaning "incapable of being maintained or supported,"[1] or (2) "amounts to a subterfuge to avoid federal review of a constitutional violation." *Taylor v. Kincheloe*, 920 F.2d 599, 609 (9th Cir. 1990); *see Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11 (1975). This Court disagrees. The state court

---

[1] Oxford English Dictionary online, http://dictionary.oed.com, *untenable* (2d. ed. 1989).

interpretation here mirrors the statutory language. Far from being untenable, it is reasonable and justifiable. The state court interpretation certainly is not a "subterfuge to avoid federal review." On the contrary, the Idaho Supreme Court arrived at its interpretation only after it carefully reviewed federal standards; therefore, a subterfuge argument that the Idaho Supreme Court was attempting to avoid federal review simply does not apply.

To prevail under AEDPA, Petitioner must show that the Idaho Supreme Court's decision was so unreasonable in its application of *Blockburger*, *Hunter*, and other governing precedent that all jurists would agree that it is unreasonable and cannot stand. Stated differently, if fairminded jurists could disagree on the correctness of the state court decision, the Court cannot grant relief under § 2254(d)(1). *Richter*, 562 U.S. at 101.

*Blockburger* does not prohibit cumulative punishment imposed through two statutes that proscribe the same conduct if authorized by the state legislature, and, therefore, *Blockburger* is satisfied by the Idaho Supreme Court's interpretation of the enhancement statute. *Hunter* was properly distinguished by the Idaho Supreme Court: in Idaho, the state legislature intended a sentence for a crime, plus an additional sentence if a weapon was used. The Ninth Circuit has similarly held. *See May v. Summer*, 622 F.2d 997, 999 (9th Cir. 1980).

The *Hunter* Court emphasized that, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." 459 U.S. at 365-66. No double jeopardy violation is evident here. Because fairminded jurists could disagree

on the correctness of the state court's decision (and most would agree with it, as this Court does), relief is not warranted under § 2254(d)(1). Accordingly, Claim 2 is subject to denial.

### 2.  General Standard of Law Governing Claims 3(a) through (c)

The question before this Court on Plaintiff's challenges to trial court evidentiary rulings is not whether the Idaho Court of Appeals' decisions were erroneous, but whether that court reasonably found that the probative value of the evidence was not substantially outweighed by the risk of any unfair prejudice. State's Lodging B-5, p. 7. "A federal habeas court [] cannot review questions of state evidence law.'" *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Instead, habeas courts "may consider only whether the petitioner's conviction violated constitutional norms." *Id*. (citing *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)). To establish a denial of fundamental fairness, "the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941).

### 3.  Claim 3(a)(i)

Claim 3(a)(i) is that the state trial court made prejudicial evidentiary rulings in violation of Petitioner's Sixth and Fourteenth Amendment fair trial rights by wrongfully "allow[ing] the Jury to hear about" his actions the day after the crimes occurred. Dkt. 17, p. 8. In particular, the trial court allowed the State to present evidence showing that Petitioner tried to return the stolen stroller to another Walmart for store credit the day after he stole it and that he fled from police when they tried to apprehend him after the unsuccessful return.

## A. *State Court Proceedings*

The Idaho Court of Appeals rejected Petitioner's argument, finding that his attempt to return the stroller was relevant to show (1) his intent to steal and then return items for store credit, and (2) his guilty conscience. State's Lodging B-5, pp. 5-7. The court of appeals further determined that the probative value of the evidence was not outweighed by any risk of unfair prejudice. *Id*., p. 7.

The court of appeals reasoned that, because the jury had seen the stronger video evidence that Passons left the store without paying for the stroller, the weaker evidence that he later tried to return the stolen stroller for store credit could not have outweighed the evidence of stealing the stroller. State's Lodging B-5, p. 7. The next-day evidence of the return "could have only slightly impugned Passons' character." *Id*. Therefore, the court concluded that the evidence had little prejudicial effect," when weighed against its probative value of supporting a motive and a plan. *Id*.

## B. *Analysis of Reasonableness of State Court Decision*

Petitioner argues only that the jury "was tainted" by hearing Petitioner's after-the-fact actions. Dkt. 17, p. 8. Prejudice and unfair prejudice are not the same thing. Evidence of after-crime activities that is undoubtedly prejudicial is nevertheless regularly admitted in criminal trials, for example, burying a weapon, charging items on stolen credit cards, or washing blood off of clothing. Here, the evidence was close in time to the commission of the crime and directly relevant—an attempt to return the same stroller for something of value (store credit). The Court agrees that the evidence of the actual stealing event took the sting out of the return attempt.

MEMORANDUM DECISION AND ORDER - 15

In addition, the Court agrees with Respondent that the return evidence was especially relevant considering Petitioner's theory of the case—that this was an overblown petit-theft case. This theory "put his intent squarely at issue" because he was arguing that he did not have the intent to steal when he went into Walmart the first time. *See* State's Lodging A-2, pp. 159-60. The prosecutor rebutted that theory by showing that, even despite almost being apprehended by the store security employees, he risked returning to a different store to return the stroller for store credit. The prosecutor argued that the return attempt was part of Petitioner's plan to steal items before he entered the store the first time. *Id*., pp. 159-60, 274.

Petitioner has not brought forward anything showing that, under the circumstances, the evidence was *unduly* prejudicial so as to prevent a fair trial. The Idaho Court of Appeals' determination that evidence about returning the stroller the following day was relevant and not unduly prejudicial was not contrary to existing United States Supreme Court due process precedent. Petitioner is not entitled to relief on this claim, either under AEDPA or a de novo standard of law.

### 3.  Claim 3(a)(ii)

Petitioner also asserts that the trial court erred by admitting evidence of Petitioner's flight from officers in downtown Sandpoint the day after the crime, after he unsuccessfully attempted to return the stroller.

### A.  *State Court Proceedings*

The Idaho Court of Appeals disagreed with the trial court and determined that the evidence of evading officers was *not* directly relevant "to show a motive or intent to enter

MEMORANDUM DECISION AND ORDER - 16

the store to steal the television" the previous day. State's Lodging B-5, pp. 6-7. However, the court of appeals determined that "Passons' flight from officers, though likely in part dealing with his attempt to return the stolen stroller, is also reasonably seen as an attempt to avoid prosecutor for stealing the stroller, attempting to steal the television, and threatening the store employees with a knife." Thus, it was admissible as "consciousness of guilt" evidence, rather than motive or intent evidence. The Idaho Court of Appeals also determined that the evidence was prejudicial, but not unfairly prejudicial.

### B. *Analysis of Reasonableness of State Court Decision*

Here, Respondent points to United States Supreme Court case law approving use of evidence of flight as "consciousness of guilt" evidence. "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (probable cause determination context). The United States Court of Appeals for the Ninth Circuit has likewise concluded. *See United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986) ("Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself.").

This Court concludes that the Idaho Court of Appeals' decision is not contrary to federal due process standards set forth in United States Supreme Court precedent: the admission of the evidence of Petitioner's flight did not prevent a fair trial in light of all of the other evidence presented. As noted above, many actions defendants take after committing crimes are regularly properly admitted at trial. Under both the AEDPA deferential standard or a de novo standard, this claim does not warrant habeas corpus relief.

### 4.  Claim 3(b)

Claim 3(b) is that the court's denial of a mistrial motion based on a venire member's statements about Petitioner's tattoos and presumed criminal history violated his right to a fair trial under the Sixth Amendment.

### A.  *State Court Proceedings*

The claim is based on the following exchange between the potential juror, Ms. Cook, and the trial court:

| | |
|---|---|
| MS. COOK: | [I]f he's a defendant, I work in a bar. He's already covered in tattoos. He's been in and out of jail more than I can count. Those aren't normal tattoos that people just get for decoration. I've already formed an opinion of him. I honestly don't think I can give him a fair trial. |
| THE COURT: | Well, I don't know that I agree with your conclusions, but that's not important. I appreciate you offering that and you being ——— |
| MS. COOK: | I know about the difference between decorative and ——— |
| THE COURT: | That's quite all right. Thank you very much, Ms. Cook. Why don't you go ahead and step down and I will excuse you. |

State's Lodgings A-2, pp. 19-20; E-9, pp. 19-20.

Later in the day, Petitioner's counsel, Mr. Chapman, had the opportunity and did examine the jurors on whether any had a personal bias:

> Q.   When we first started this morning—well, let me just ask
> it this way: Is anybody here going to say Mr. Passons is
> guilty because of the way he looks? It's America. It's
> okay to say so.

Dkt. A-2, p. 65. No juror responded to the question.

Later, outside the presence of the jury panel, Petitioner's counsel argued:

> Now, I ask[ed] them, because I was forced to in voir
> dire, if they had—if anybody was going to convict somebody
> on the way they look. And there was no response or I don't
> believe the record showed there was a response.

> But who's going to say that, Judge? These people look
> at my client now and say, oh, those are prison tatts; he must be
> a con. We must draw all kind of conclusions whether they're
> willing to voice those or not.

*Id*., pp. 78-79. Counsel also argued that it was doubtful jurors could "remain objective after

hearing something like that," which "severely compromise[d] [Passons'] right to a fair

trial." *Id*., pp. 79-80.

Before ruling on the motion, the trial court stated for the record that Petitioner had

a rather large star tattoo on the upper right side of his forehead, visible tattoos above his

collar line and underneath his chin, and some tattoos on his hands. *Id*., pp. 82-83. During

voir dire, Petitioner was wearing a blue long-sleeved shirt, a tie, and khaki pants. *Id*., p.

82.[2]

The trial court denied the mistrial motion:

> Ms. Cook was given the rather short rein, but she did
> articulate some information that understandably creates some
> concern for Mr. Passons, and that is, is that he's been in jail

---

[2] Later, during trial, one of the witnesses testified that Petitioner had multiple tattoos on his arms.
State's Lodging B-25, p. 9 n.3.

MEMORANDUM DECISION AND ORDER - 19

and that he has tattoos that lead her to believe that—well, simply, that she can't give him a fair trial.

Now, the Court's concern here is whether or not that statement is sufficient enough to conclude that this jury has been tainted and simply cannot extend a fair trial to Mr. Passons. This jury was questioned extensively by Mr. Verharen, and then additionally by Mr. Chapman with respect to any other areas of potential bias or concern. A number of those were examined. None of the jurors had indicated in any way that they were not able to accept the burden that the state has to meet and that the defendant's presumption of innocence is not at least recognized by the jurors.

I'm not satisfied—while I do agree this is an area of concern, I'm not satisfied that it's so extreme that comments by Ms. Cook, who is not a witness but simply a juror, has created an environment that Mr. Passons would not otherwise be entitled to a fair trial.

*Id.*, pp. 84-85.

On appeal, the Idaho Court of Appeals concluded that a mistrial was not required because of the following facts. First, the trial court immediately told Ms. Cook, the bartender, that it was not sure it agreed with her conclusions. Second, it was unclear whether the bartender was claiming to be an expert in prison "tattoo hierarchies" and it was unlikely that other jurors could have "take[n] her seriously when that's her claim to expertise." *Id.* Third, defense counsel specifically "inquired if the jury would rely on Passons' appearance in determining his guilt," and no juror answered affirmatively. State's Lodgings B-5, p. 8-9; A-2, p. 65. Under these circumstances, the Idaho Court of Appeals concluded that, "[c]onsidering the trial as a whole … the statements were not so prejudicial as to require reversal." State's Lodging B-5, p. 10.

MEMORANDUM DECISION AND ORDER - 20

### B. *Federal Standard of Law*

The law is clear that the Sixth Amendment right to a jury trial guarantees a criminal defendant a fair trial by a panel of impartial, "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Skilling v. United States*, 561 U.S. 358, 377–78 (2010). Jurors are presumed to be impartial. The Supreme Court explained:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 723.

"Voir dire" means "to speak the truth." *Fields v. Brown*, 503 F.3d 755, 772 (9th Cir. 2007). "Voir dire examination serves to protect [the right to an impartial trier of fact] by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). The burden is on the challenger to show "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality"; otherwise, "the juror need not necessarily be set aside." *Irvin*, 366 U.S. at 723.

Once jurors are selected, absent evidence showing otherwise, jurors are presumed to have followed the court's instructions. *See, e.g., Penry v. Johnson*, 532 U.S. 782, 799 (2001); *cf. Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (recognizing that curative instructions will generally cure error except in rare circumstances).

The Idaho Court of Appeals relied on a state rule that permits a mistrial only when

an error or legal defect occurs "which is prejudicial to the defendant and deprives the defendant of a fair trial." Idaho Criminal Rule 29.1; State's Lodging B-5, pp. 7-8. This Court previously ruled that this standard was similar enough to the Sixth Amendment standard that it would liberally construe Petitioner's federal claim as properly exhausted. Dkt. 20. Both standards ask whether the "full record" shows the defendant received a fair trial. State's Lodging B-5, p. 8 (quoting *State v. Urquhart*, 665 P.2d 1102, 1105 (Idaho Ct. App.1983)).

### C. *Analysis of Reasonableness of State Court Decision*

Petitioner bears the burden to show that the ruling on Ms. Cook's statement, which ruling was upheld by the Idaho Court of Appeals, was contrary to, or an unreasonable application of, United States Supreme Court precedent governing the right to a fair trial. The question is whether the jurors who were eventually selected would have relied on Ms. Cook's voir dire statement to draw an inference that Petitioner was an ex-convict and retained that bias against Petitioner to determine the verdict. There is nothing in the record to show that any juror intentionally or maliciously failed to respond to the voir dire question about whether Petitioner's appearance would matter to them. There is nothing in the record to suggest that the verdict was based in part on the voir dire statement.

In *Wilson v. Heath*, 938 F. Supp. 2d 278, 288 (N.D.N.Y. 2013), a potential juror made a reference to the defendant previously having been in prison, and the following occurred:

> [O]ne of the prospective jurors—a retired prison warden—
> answered that the "defendant seems vaguely familiar. I don't
> know if I ran across him in prison or ...." [The trial court]

immediately interrupted the juror, who was later excused, and the court subsequently denied the motion for a mistrial based on this comment. The court then issued curative instructions upon the continuation of voir dire that jury members were to disregard "what jurors say during jury selection [as it] certainly does not constitute evidence" and further inquired, with negative results, if there were any potential jurors that would be unable to follow that instruction.

In dismissing this claim, the Appellate Division concluded that the trial court "made an appropriate inquiry of the remaining jurors, and its subsequent curative instructions 'sufficiently alleviated any potential prejudice to defendant and ensured his right to an impartial jury[.]' " *Id.* at 1215, 910 N.Y.S.2d 276 (citations omitted). As discussed below, the Appellate Division's dismissal of this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

*Id.* at 288.

Here, the result is similar. Defense counsel made an appropriate inquiry as to whether any juror would draw a negative inference from his appearance. None responded that they would. The trial court indicated that it would not necessarily agree with Ms. Cook's opinion as soon as Ms. Cook stated her opinion. No curative instruction was given, but often curative instructions serve to highlight or underscore the statement, and, thus, whether to give one is a matter for the particular trial court's discretion. Given that Ms. Cook was not established as an expert on the meaning of tattoos and that her opinion was cut short by the court, it is not clear that a curative instruction was necessary here.

In addition, the jury was instructed as follows:

- "The law requires that your decision be made solely upon the evidence before you. Neither sympathy nor prejudice should influence you in your deliberations." State's

Lodging A-2, p. 149.

- "In determining the facts, you may consider only the evidence admitted in this trial," which consists of "the testimony of the witnesses, the exhibits offered and received, and any stipulated or admitted facts." *Id*.

- "You are to decide the facts from all the evidence presented in the case," which consists of the witnesses' testimony, exhibits admitted into evidence, and facts stipulated by the parties. *Id*., p. 265.

The Idaho Court of Appeals determined that the potential juror's single remark was "not so prejudicial as to require reversal." State's Lodging B-5, p. 10. This Court concludes that the entire record in this matter supports a finding that the opinions of the state district court and the Idaho Court of Appeals were reasonable and comport with the federal due process standard: any prejudice from the juror's statements did not "rise to the level that would require a mistrial," for all of the reasons cited above and below.

Strong evidence of Petitioner's guilt was introduced, including his admission that he committed only petit theft, the video of him stealing the stroller, the testimony of the person he enlisted to help him return the stroller, and the testimony of the two victims who saw him with the stolen TV and saw him brandish the knife. After the jury heard the evidence at trial, it is highly unlikely that the jury would have relied on Ms. Cook's voir dire comments about the tattoos to support the verdict.

No juror voiced a bias or opinion of their own. None affirmatively answered the question of whether they would be influenced by Petitioner's appearance. None stated that they were or could be influenced by Ms. Cook's statement or by Petitioner's appearance.

MEMORANDUM DECISION AND ORDER - 24

Ms. Cook's statement was not exceptional or extreme. For these reasons, Petitioner has not borne his burden to show that the comments created an unfair trial under federal due process standards. This claim fails under both the AEDPA deferential standard and the de novo standard of law, but the Court will issue a certificate of appealability on this claim, including the issue of whether a curative instruction should have been given.

### 5. Claim 3(c)

Claim 3(c) is that the court violated Petitioner's right to a fair trial under the Sixth Amendment when it denied Petitioner's mistrial motion based on the arresting officer wrongly testifying that Petitioner was a robbery suspect. *See* State's Lodging B-2, p. 23.

### A. *State Court Proceedings*

Officer Heberer, the State's final witness, testified that she was on patrol and became involved in pursuit of a vehicle. The prosecutor asked, "What was going on during the pursuit?" The officer stated, "We were following a suspect from a robbery that occurred." State's Lodging A-2, pp. 232-234.

The court sustained an objection, and Petitioner's counsel moved to declare a mistrial because the word "robbery" was inaccurate, was inflammatory, and deprived Petitioner of his right to a fair trial. *Id*., pp. 234-237. The prosecutor argued he did not purposely solicit the information about a robbery and urged a corrective instruction instead of a mistrial.

The trial court concluded that "the question that was presented to" the officer "certainly did not call for the response" that was given. *Id*., p. 239. The court stated it "appreciated the concern," but did not think the statement was "elevated at all" to the level

of declaring a mistrial. *Id*. Further, the court noted the jury was going to be "properly instructed on" the "two charges of assault and one charge of burglary," and the court "entrusted" the jury "to determine whether or not the facts prove those particular charges." *Id*.

The trial court denied the motion for a mistrial. At defense counsel's request, the court gave the following curative instruction to the jury:

> I want to instruct you that there was no robbery. There has been no robbery charged, nor is Mr. Passons a suspect in a robbery at the relevant time in question here. So I just want to make sure the jury is very well aware of that.

State's Lodgings B-2 (citing transcript); A-2, pp. 241-42.

Applying the same mistrial standards described above, the Idaho Court of Appeals determined that Petitioner failed to show that any prejudice from the statement rose "to the level that would require a mistrial." State's Lodging B-5, p. 9. The appellate court relied on the fact that the trial court specifically instructed the jury "that no robbery had taken place" State's Lodgings B-5, p. 10, and applied the legal presumption that the jury follows the jury instructions. *Id*. (citing *Greer*, 483 U.S. at 766 n.8). The court of appeals also determined that it was "unlikely that the jury would have understood the legal distinction between robbery, theft through violence or threat of violence, and Passons' conduct at the Post Falls store where he attempted to steal a television, threatened two employees with a knife, and then fled the store." State's Lodging B-5, p. 10. Based on "the trial as a whole," the court concluded that the statement was "not so prejudicial as to require reversal." *Id*.

### B. *Analysis of Reasonableness of State Court Decision*

This Court agrees with the conclusion of the state courts. The entirety of the trial record shows that any prejudice caused by the "robbery" comment was offset by the curative instruction, the jury instructions that defined the elements of the charged offenses, the fact that Petitioner admitted to having unlawfully taken the stroller, and the weight of all of the evidence providing sufficient basis for the jury to find that Petitioner committed the charged offenses. Whether reviewed deferentially or de novo, Petitioner has not borne his burden to show that his trial was constitutionally unfair as a result of the "robbery" comment.

### 6. Claim 3(d)

Claim 3(d) is one of cumulative error, brought as a Fourteenth Amendment due process claim. The United States Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Chambers v Mississippi*, 410 U.S. 284, 290 n. 3, 298, 302-03 (1973). The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive," *Chambers*, 410 U.S. at 294, and thereby had a "substantial and injurious effect or influence" on the jury's verdict, resulting in actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotations omitted).

### A.  *State Court Proceedings*

On appeal, Petitioner argued "the error in admitting evidence of other misconduct the day after the crime and the statements made by the juror and officer deprived him of his right to fair trial." State's Lodging B-5, p. 10. In his Traverse/Reply, Petitioner argues that the errors were "drawn out' because Ms. Cook's comment was on the first day of trial, and the officer's comment was on the second day of trial. Regardless, because the court of appeals found no error in admission of the evidence that occurred the day after the crime, it concluded that Petitioner failed to show cumulative error.

### B.  *Analysis of Reasonableness of State Court Decision*

Reviewing admission of the alleged errors together, the Court concludes that, in light of the jury instructions and strength of the other evidence against Petitioner (including his case strategy admission that he took the stroller but it was mere petit theft), the errors together did not produce an unfair trial that warrants habeas corpus relief, either under AEDPA or de novo review. Petitioner has not shown that any of the alleged errors, or all of the alleged errors combined, would overcome the strength of the evidence against him such that they would have a substantial and injurious effect on the jury verdict to meet the actual prejudice standard. This claim fails under AEDPA deferential review or de novo review and also fails under the *Brecht* harmful error requirement.

### 7.  Claim 4(b)

Claim 4(b) is that the trial court violated Petitioner's constitutional rights by not conducting an adequate inquiry into his waiver of the right to self-representation.

A. *State Court Proceedings*

Initially, a public defender was appointed to represent Petitioner. On August 30, 2012, Petitioner asked to represent himself, and the public defender moved to withdraw based on "*Faretta v. California*." State's Lodging A-1, p. 31; see Footnote 3, *infra*. Petitioner stated on the record that he desired to represent himself, and he had that right under the United States and Idaho Constitutions. He stated that he had represented himself three times in the past, including at a jury trial. *Id*.

After giving Petitioner a day to reconsider his decision, the trial court allowed counsel to withdraw. *Id*., p. 35. However, the trial court ordered counsel to remain as stand-by counsel to provide assistance to Petitioner. *Id*.

On October 16, 2022, after Petitioner had encountered difficulties representing himself, the trial court said to Petitioner at his arraignment:

> I want to discuss with you your right to counsel. You already qualify for court appointed counsel. You do have a right to counsel under the 6th amendment and a right to represent yourself. I understand that you previously made that decision. You have been appointed stand by counsel and I understand you can use it if you wish or not – it's your choice. Regardless of how intelligent you are or how much experience you have you are probably not going to be much of a match to the office of Kootenai County Prosecuting Attorney. The attorney to be assigned will probably have tried several high profile cases. Your standby counsel is highly qualified of handling the case. It is a risky endeavor [f]or anyone to represent themselves in court.

*Id*., pp. 94-95.

The trial judge also explained:

> The Judge's role is to apply the law and rules and I don't

> extend any different standard to one side or the other. The state
> will be much more versed in trial than you would. You are less
> likely to be experienced in the rules and how to apply them.

*Id*. p. 95. Petitioner repeatedly said he understood and then had an off-record conversation

with the public defender. Afterwards, Petitioner responded: "You convinced me—can I get

[the public defender] appointed to represent me again?" *Id*.

On post-conviction review, Petitioner raised a claim that he did not properly waive

his right to self-representation, and that the trial court should have ensured that he made

the choice to revert from self-representation to his prior representation knowingly and

voluntarily. He relied on two Ninth Circuit cases for his argument: *United States v. Audette*,

923 F.3d 1227, 1236 (9th Cir. 2019), and *United States v. Hantzis*, 625 F.3d 575, 580-81

(9th Cir. 2010). The Idaho Court of Appeals determined that there exists no legal authority

for an argument that a trial court is required to give *Faretta* warnings in such

circumstances.[3] State's Lodging F-4, pp. 7-8.

### B.  *Analysis of Reasonableness of State Court Decision*

The holdings of *Audette* and *Hantzis* do not support Petitioner's position because a

different subject was at issue (whether a defendant must have a *Faretta* more than once in

a proceeding, not whether a defendant "knowingly and intelligently relinquish[ed] his self-

---

[3] *See Faretta v. California*, 422 U.S. 806 (1975). *See id.* at 835 (defendant must "be made aware
of the dangers and disadvantages of self-representation"; *see also United States v. Erskine*, 355
F.3d 1161, 1167 (9th Cir. 2004) ("A defendant's decision to forgo counsel and instead to defend
himself—known as a *"Faretta* waiver"—is valid if the request is timely, not for the purposes of
delay, unequivocal, and knowing and intelligent …. In order to deem a defendant's *Faretta* waiver
knowing and intelligent, the district court must insure that he understands," among other things,
"the dangers and disadvantages of self-representation") (emphasis added) (internal quotation
marks omitted).

representation right"). *See* State's Lodging F-1, p. 16. In any event, neither case is United States Supreme Court precedent. Petitioner must point to a case from the United States Supreme Court to support his assertion that the trial court should have determined whether he knowingly and voluntarily waived the right to self-representation after he requested that his original counsel be re-appointed to represent him.

The Idaho Court of Appeals relied on a Tenth Circuit case to show that "no court has said that the fair trial protections which are required to waive the right to counsel are necessary to waive the right to self-representation," *Munkus v. Furlong*, 170 F.3d 980, 983 (10th Cir. 1999). *See* States' Lodging F-4, pp. 5-6. The reasoning of the Tenth Circuit on this issue is sound. The Court has found no United States Supreme Court case supporting Petitioner's claim that a defendant must be given *Faretta* warnings in order to waive the right to self-representation and proceed with counsel. Rather, *Faretta* warnings are only required *before* a defendant waives the right to counsel and proceeds pro se. Therefore, the Idaho Court of Appeals' rejection of Claim 4(b) is not contrary to any United States Supreme Court precedent. This claim does not warrant habeas corpus relief.

Because none of Petitioner's claims meet the standards for habeas corpus relief, the entire Petition will be denied and dismissed.

## ORDER

**IT IS ORDERED:**

1.    Respondent's Motions for Extension of Time to File Answer (Dkts. 32, 34) are GRANTED.

2.    Petitioner's Motion for Case Law (Dkt. 35) is DENIED.

MEMORANDUM DECISION AND ORDER - 31

3.      Petitioner's Motion for Production of Missing Pages (Dkt. 39) is DENIED as MOOT.

4.      The Amended Petition for Writ of Habeas Corpus (Dkt. 17) is DENIED and DISMISSED with prejudice.

5.      The Court will issue a certificate of appealability on Claim 3(b), whether Ms. Cook's statements during voir dire and the trial court's failure to give a corrective instruction violated Petitioner's due process right to a fair trial. The Court does not find its resolution of any other claim in this habeas matter to be reasonably debatable. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. IF desired, Petitioner may seek a certificate of appealability as to other claims directly from the Ninth Circuit by filing a request in that court.

DATED: September 7, 2023

David C. Nye
Chief U.S. District Court Judge